RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
KEVIN A. TATE
Litigation Resource Counsel
Nevada State Bar No. 8687
BENJAMIN F. J. NEMEC
Assistant Federal Public Defender
Nevada State Bar No. 14591
Las Vegas, NV 89101
(702) 388-6577/Phone
(702) 388-6261/Fax
Kevin_Tate@fd.org
Ben_Nemec@fd.org

Attorneys for Marcus Smith

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Marcus Smith,<br><br>　　　　　Defendant. | Case No. 1:24-cr-00042-DLF<br><br>**BRIEF IN SUPPORT OF JURY INSTRUCTIONS** |

　　　　MARCUS SMITH ("Mr. Smith"), by and through his counsel of record, Kevin A. Tate and Benjamin Nemec, Assistant Federal Defenders, District of Nevada, files this Brief in Support of his proposed jury instructions.

I.      Introduction

Both parties submitted proposed jury instructions to this Court. ECF Nos. 31, 32. Mr. Smith has no objection to the government's standard jury instructions, and no objection to the jury instructions for counts three, four, five, six, and seven to the extent they differ from Mr. Smith's proposed jury instructions.

However, the government's proposed jury instructions for counts one and two are erroneous. For count one, the government's proposed jury instructions fail to clarify that Mr. Smith *must have caused* over $1,000 in damages. The government's proposed jury instructions, as they stand, may lead a jury to erroneously believe Mr. Smith could be found guilty of felony destruction of government property even if his actions did not amount to over $1,000 in damages. Allowing an increased sentencing exposure for actions taken by others goes against well worn jury instructions and jurisprudential policy.

For count two, the government disavows the fact that Mr. Smith had to know a secret service protectee was in the restricted area he entered. While there is a split among the D.C. courts about whether a defendant had to know a secret service protectee was in the area they entered, the arguments underlying a more robust scienter outweigh the government's more loose outlook on the elements.

II.     Argument

    A.    **To convict Mr. Smith of a felony, the government must prove his actions caused more than $1,000 in damages.**

In its proposed jury instructions, the government advances the argument that this Court should only instruct the jury that "the damage to the property in question exceeded the sum of $1,000." ECF No. 31, p. 6. That vague and passive jury instruction will lead the jury to believe Mr. Smith can be found guilty of felony damage to government property even if the actions of others, completely removed from Mr. Smith, caused the lion's share of the damage.

That is especially concerning here. It is undisputable that there were multiple people damaging the door, including battering the door down with stanchions, ***before Mr. Smith even arrived at the scene.*** Mr. Smith cannot be held responsible for the actions of individuals well removed from his knowledge or conduct. That's why the Modern Federal Jury Instructions

recommends this Court advise the jury that "[t]he damage to the property is the cost to the government to repair or restore the damages *caused by the defendant's actions*." 2 Modern Jury Instructions-Criminal, P. 44A.01 (emphasis added).

"[I]t must be recognized that the imposition of criminal liability for faultless conduct is contrary to the basic Anglo-American premise of criminal justice that crimes require personal fault of the accused." 2 Wayne R. LaFave & Austin W. Scott, Substantive Criminal Law, § 13.4(d) Pros and cons of vicarious-liability crimes, (3d ed.). While joint and several liability is used for restitution, drawing a distinction "between a fine and imprisonment is an appropriate one. *Id.* "[T]o the extent that vicarious liability can be justified in the criminal law, it should not be utilized to bring about the type of moral condemnation which is implicit when a sentence of imprisonment is imposed. On the other hand, imposition of a fine is consistent with the rationale behind vicarious criminal liability." *Id.*

Convicting Mr. Smith for the damage of others for actions he had nothing to do with would be the type of various liability decried by the law. Mr. Smith requests this Court instruct the jury that they must calculate the damage done to government property based only on Mr. Smith's actions.

### B. Mr. Smith had to know a secret service protectee was in the area he entered.

The government summarily contends that 18 U.S.C. § 1752(a) does not require the defendant to have acted with knowledge that an individual protected by the United States Secret Service was present on the restricted grounds. However, as several courts in this jurisdiction have concluded, the most reasonable reading of Section 1752(a) supports Smith's position: that the statute requires Smith to have acted with knowledge that a Secret Service protectee was present at restricted grounds at the time. *E.g.*, *United States v. Samsel*, No. 21-cr-537 (JMC), ECF No. 345, at 32-33 (D.D.C. Feb. 9, 2024) (Cobb, J.); *United States v. Groseclose*, No. 21-cr-311 (CRC), 2024 WL 68248, at *9 (D.D.C. Jan. 5, 2024) (Cooper, J.); *United States, v. Elizalde*, 704 F. Supp. 3d 244, 247–48 (D.D.C. 2023) (Nichols, J.); *United States v. Hostetter*, No. 21-cr-392 (RCL), 2023 WL 4539842, at *4 (D.D.C. July 13, 2023) (Lamberth, J.).

"Whether a criminal statute requires the Government to prove that the defendant acted knowingly is a question of congressional intent." *Rehaif v. United States*, 588 U.S. 225, 228 (2019). And the best evidence of Congressional intent "is the statutory text adopted by both Houses of Congress and submitted to the President." *Groseclose*, 2024 WL 68248, at *5 (quoting *All. of Artists & Recording Cos. v. Gen. Motors Co.*, 162 F. Supp. 3d 8, 20 (D.D.C. 2016)). Here, the plain text of the Section 1752(a) supports Smith's reading of the statute because, "[a]s 'a matter of ordinary English grammar,'" courts "normally read the statutory term 'knowingly' as applying to all the subsequently listed elements of the crime." *Rehaif*, 588 U.S. at 230 (quoting *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009)). And while this rule may yield in cases "where the modifier 'knowingly' introduces a long statutory phrase," *id.*, Section 1752(a) is not such a case; rather, the statute "simply incorporates the statutory definition where (a)(1) and (a)(2) use the defined term." *Elizalde*, 704 F. Supp. 3d at 248. Indeed, the government's agreement here that "'knowingly' modifies 'restricted building or grounds' gives up the ballgame," because "to know that an area is a 'restricted building or grounds,'" the defendant necessarily "must know that the area is of the sort described in the statutory definition" set forth in Section 1752(c)(1)(A)-(B). *Id.*

The practical application of this reading further supports Smith's position. Adopting the government's proposed reading of Section 1752(a) would "unnecessarily sweep[] up low-risk individuals—such as someone who seeks to shorten his walk home by crossing a cordoned off construction site that, unbeknownst to him, the President plans to visit later that day." *Elizalde*, 704 F. Supp. 3d at 251. And while Congress undoubtedly "wanted to safeguard Secret Service protectees" with Section 1752(a), "courts have long refused to 'simplistically . . . assume that whatever furthers the statute's primary objective must be the law." *Id.* (quoting *Rodriguez v. United States*, 480 U.S. 522, 526 (1987) (per curiam)); *accord Groseclose*, 2024 WL 68248, at *6.

Finally, despite the conclusion of some courts in this jurisdiction, Section 1752(a)'s requirement that a Secret Service protectee be present is not a jurisdiction-only element. Rather, as explained in *Groseclose*, the enhanced punishment under Section 1752(a) compared to other

federal statutes proscribing trespass shows that Congress did not intend for the presence of a Secret Service protectee to merely serve a jurisdictional function. 2024 WL 6824, at *6. For example, 40 U.S.C. § 5109(b), which prohibits disorderly conduct in a Capitol Building, is a Class B misdemeanor punishable by up to six months' imprisonment, whereas Section 1752(a) is a Class A misdemeanor punishable by up to one year imprisonment. And under the Sentencing Guidelines, a trespass offense level is increased by 2 if it "occurred at 'any restricted building or grounds,'" and increased by 4 if the offense "happened 'at the White House or its grounds, or the Vice President's official residence or its grounds.'" *Groseclose*, 2024 WL 68248, at *6 (quoting USSG §2B2.3). "Any factor that justifies doubling the maximum punishment and increasing the guideline offense level by 50–100% is not 'jurisdictional only' in the same way as an interstate-nexus requirement." *Id.*

As such, Mr. Smith requests this Court instruct the jury that Mr. Smith had to know a secret service protectee was temporarily visiting the restricted grounds.

### III. Conclusion

Mr. Smith requests this Court adopt his jury instructions regarding how to calculate damages for count one and the mens rea requirement for count two.

Respectfully submitted,

*/s/ Benjamin Nemec*
Kevin A. Tate
Litigation Resource Counsel-AFD
Nevada State Bar No: 8987
Benjamin Nemec
Assistant Federal Defender
Nevada State Bar No. 14591
411 East Bonneville Avenue, Suite 250
Las Vegas, Nevada 89101
Email: Kevin_Tate@fd.org
           Ben_Nemec@fd.org
Phone: (702) 388-6577

**Counsel for Marcus Smith**

**Dated**:  September 9, 2024